382 So.2d 122 (1980)
Michael R. FESTA, Appellant,
v.
TELEFLEX, INC. and Reliance Insurance Company, Appellees.
No. QQ-431.
District Court of Appeal of Florida, First District.
April 2, 1980.
Rehearing Denied May 28, 1980.
Jim D. Syprett, of Crabtree, Butler, Syprett & Meshad, Sarasota, for appellant.
Richard R. Crooke, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
PER CURIAM.
Festa seeks review of an order from the judge of industrial claims finding that he did not suffer an occupational disease or a compensable accident. We reverse.
*123 Festa began working for Teleflex, Inc. in January or February 1978. He made plastic plugs by first releasing molten plastic into a mold and then removing the excess plastic from the plug be pulling it off with pliers. This required a twisting and turning action of the wrist while exerting 30-40 lbs. of pressure, and Festa made from 500-900 plugs per workshift. The job was ordinarily performed by two persons, but Festa worked alone for approximately 45 days before he began experiencing difficulties with his hands.
Around June 2, 1978, the fingers of Festa's right hand began to get numb; he switched to using his left hand, and the fingers of his left hand became numb. He reported this to his employer and saw Dr. Grindal, a neurologist, on June 26, 1978.
Dr. Grindal testified that Festa's underlying diabetic condition could have weakened the wrist area, making Festa more susceptible to damage from the repeated trauma, but the primary factor in the development of the carpal tunnel syndrome was Festa's work.
The judge of industrial claims held there was no competent, substantial evidence upon which to award benefits for disability arising out of an occupational disease and that Festa had not suffered an accident within the meaning of the Act. Because we hold that claimant did suffer an accident, we do not rule on the question of occupational disease.
Florida has a long, well established history of awarding compensation benefits to workers who are injured by exposure to deleterious substances. Orr v. Florida Industrial Commission, 129 Fla. 369, 176 So. 172 (1937) [intense heat]; Meehan v. Crowder, 158 Fla. 361, 28 So.2d 435 (1946) [exposure to mercury]; Czepial v. Krohne Roofing Co., 93 So.2d 84 (Fla. 1957) [exposure to dust and fumes]. However, benefits have almost routinely been denied to workers whose injuries resulted from repeated minor traumas. S.H. Kress & Co. v. Burkes, 153 Fla. 868, 16 So.2d 106 (1944) [tenosynovitis caused by constant and repeated strain]; Tyler v. Homestead Canning Co., 5 FCR 58 (1962) [tenosynovitis from peeling tomatoes].
In Keller Building Products of St. Petersburg v. Shirley, IRC Order 2-3263, cert. denied 362 So.2d 1054 (Fla. 1978), the IRC resolved this disparate treatment by classifying repeated trauma as a facet of exposure, thereby bringing repeated trauma cases within the ambit of the exposure rationale. In Keller, the Commission implicitly overruled the previous cases holding that injuries resulting from repeated trauma were not compensable, e.g., Dependable Air Conditioning and Appliances, Inc. v. Topper, IRC Order 2-2927, cert. denied 341 So.2d 293 (Fla. 1976); Wanczak v. Winn Dixie Stores, Inc., 6 FCR 77 (1966) when it stated, "We can find no reason in logic for distinguishing this type of case from one where the employee is exposed to a deleterious substance associated with his employment." 2-3263 at 6. Keller, therefore, provides us with a new and more realistic method for analyzing repeated trauma cases; a method which is logically consistent with the purpose of workers' compensation: to compensate workers who suffer job related injuries.
In order to bring together and clarify the exposure rationale, we here review the principles established.
The initial Florida case involving injury by exposure was Orr, supra, wherein the claimant suffered heat exhaustion and died. In awarding benefits to the widow, the court stated:
If the heat exhaustion arose out of the employment, as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which was a proximate result of it, is an accident under our statute... . In connection with the sort of accident here involved, the principle to which most authorities give assent is that the harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a *124 danger, materially in excess of that to which people commonly in that locality are exposed, ... and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure... .
Id. at 173.
Subsequently, in Czepial, supra, compensation was awarded to a worker whose pre-existing tuberculosis was exacerbated by the constant inhalation of dust and fumes from his work. The court noting that the inhalation was a hazard to which the public was not ordinarily exposed, found a direct causal connection between the injury and the exposure and stated:
The fundamentally accidental nature of the injury is not altered by the fact that, instead of a single occurrence, it is the cumulative effect of the inhalation of dust and fumes to which a claimant is peculiarly susceptible that accelerates a claimant's pre-existing disability.
Id. at 86.
In Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581, 588 (Fla. 1962), the court reviewed the law in this area pointing out the exposure claimant must show he was "subjected to more than the ordinary hazards confronting people generally" but no cases required "that the ill effects of the exposure must occur suddenly and be immediately related to an identifiable incident." See also, Brito v. Advance Metal Products, Inc., 244 So.2d 428, 429 (Fla. 1971).
In Worden v. Pratt and Whitney Aircraft, 256 So.2d 209 (Fla. 1971), the court took a different approach. Worden developed cataracts from looking into a high intensity furnace over a period of several years. The court ruled that the cataracts were the result of repeated accidents arising out of and in the course of his employment.
In summary, for a claimant to recover under the exposure theory of accident, he must show 1) prolonged exposure, 2) the cumulative effect of which is injury or aggravation of a pre-existing condition and 3) that he has been subjected to a hazard greater than that to which the general public is exposed. Alternatively, he must demonstrate a series of occurrences, the cumulative effect of which is injury. Worden, supra. These same theories should be applied in cases involving injuries resulting from repeated trauma.
Here, Festa was daily subjected to repeated trauma; the twisting and turning action of the wrists over a prolonged period, which produced the disability. The medical testimony established the requisite causal connection, and the nature of the work exposed Festa to more than the ordinary hazard confronting people generally. His injury was compensable.
Reversed and remanded for proceedings consistent with this opinion.
MILLS, C.J., and McCORD, J., concur.
BOOTH, J., dissents with opinion.
BOOTH, Judge, dissenting.
I dissent from this court's retention of jurisdiction in this case, which arose outside the territorial jurisdiction of the court. See Crews v. Town of Bay Harbor, 378 So.2d 1265 (Fla.1st DCA 1979).
On the merits, I would concur in the majority's opinion.