425 So.2d 163 (1983)
FOOD MACHINERY CORPORATION and National Union Life Insurance, Appellants,
v.
Delmis SHOOK, Appellee.
No. AK-411.
District Court of Appeal of Florida, First District.
January 7, 1983.
Rehearing Denied February 9, 1983.
Bernard J. Zimmerman and Michael M. O'Brien of Akerman, Senterfitt & Eidson, Orlando, for appellants.
Richard R. Roach, Jr., of Woods, Murray & Roach, P.A., and Lex Taylor, Lakeland, for appellee.
LARRY G. SMITH, Judge.
The employer/carrier cites several alleged errors in the deputy commissioner's award of permanent partial disability for claimant's noise-produced hearing loss. We affirm.
The evidence was sufficient to meet the three-pronged test of Festa v. Teleflex, *164 Inc., 382 So.2d 122 (Fla. 1st DCA 1980).[1] First, the claimant worked for twenty-three years in a one-room, seven hundred foot long machinery-filled manufacturing plant. This was prolonged exposure. Secondly, Dr. Barranco, an eye, ear, nose and throat specialist, found from tests he performed that claimant had nerve damage resulting in approximately 36.2 percent hearing loss in both ears, a significant portion of which was due to long term noise exposure. In addition, the claimant established that before his work with Food Machinery Corporation, the employer, he was not exposed to any unusual or excessive noise trauma in his work, and both claimant and his wife verified that he was exposed to no unusual or excessive noise trauma during his off-hours.[2] Thus causal relationship was established. Thirdly, the building where claimant worked contained, among other things, ten-foot and twenty-foot shears used to cut thick steel plates. When these shears operated, the whole building shook. Claimant's work consisted of building forms for concrete. He spent all day pounding steel sheets with a ten-pound sledge. In his immediate area, in the center of the building, were fifteen to twenty welding machines and twenty air grinders. The workers welded seams on the steel forms, then turned the sheets over to grind the welds smooth. There were also gasoline-powered forklifts operating in the building. Claimant worked on structural assembly for about twenty-one years. During his last two years, he assembled popsickle machines made of stainless steel. The claimant testified that it was the noisiest place he had ever seen in his life.[3] Thus, exposure to a noise hazard greater than that to which the general public is exposed was established.
We conclude that causal relation was established by "clear evidence," as mandated by Harris v. Joseph's of Greater Miami, 122 So.2d 561, 562 (Fla. 1960). Here there was medical evidence, based upon tests, that the claimant's hearing loss was due to noise trauma.[4] The fact that Dr. Barranco could not specify the specific incident or type of noise which caused the claimant's condition is immaterial.[5] The "logical cause" doctrine, which is generally applicable with respect to other types of injuries, is applicable here. As to "logical cause," generally, see Fisher v. Carroll Daniel Fisher Construction Co., 212 So.2d 289 (Fla. 1968); Logan v. Poe's Hardware & Rentals, 381 So.2d 1170 *165 (Fla. 1st DCA 1980); and see, also, Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981), which impliedly, though not expressly, relied upon the logical cause doctrine to establish causation in an exposure case.[6]
The E/C challenge the deputy commissioner's finding that the absence of noise level tests is not fatal to the claimant's case. The E/C contend, correctly, that the burden of proof rests upon the claimant to come forward with noise level tests, if such evidence is required to prove his claim. We agree with the E/C's position with respect to the burden of proof, but we do not agree that the deputy commissioner improperly shifted this burden. First, the E/C have not provided us with any legal authority to the effect that proof of excessive noise levels can be made only by scientific tests. The claimant's description of the plant's machinery and operations "leaves no doubt," according to the deputy commissioner's finding, that the noise factor in the claimant's work place exceeded that to which the general public is exposed. While the subject of noise levels would undoubtedly be an appropriate one for expert testimony, we are not convinced that it is one that necessarily requires expert testimony. See, Law Revision Council Note  1976, Florida Evidence Code, Section 90.702, Florida Statutes Annotated, Vol. 6C, page 195: "If the issue involves a matter of common knowledge about which the ordinary layman would be capable of forming a correct judgment, expert testimony is not admissible. If the triers of fact have a general knowledge of a matter, but an expert's testimony would aid their understanding of the issue, it would be admissible." Secondly, we note that the E/C presented no evidence to refute the claimant's testimony on this issue. Accordingly, the determination of whether or not the noise level to which claimant was subjected exceeded that to which the general public is exposed was a matter within the authority of the deputy commissioner to decide; based upon all the evidence.
The E/C next contend that the claim for benefits was untimely because the claimant failed to file his claim within the two-year period prescribed by Section 440.19, Florida Statutes. The evidence on this issue was somewhat conflicting, and the resolution of those conflicts was a matter for the deputy commissioner. Dr. Barranco first saw the claimant on June 1, 1979. The claimant's original claim was filed on April 22, 1981, listing the date of accident as "NA." Although it appears that an accident date of "1-17-79" was "penciled in" on this form, it was denied that this date was inserted by the claimant, or his attorney. Claimant's attorney filed a renewal of this claim on August 31, 1981, listing an accident date of June 1, 1979. In addition to this irregularity, it appears that a complete diagnosis of claimant's condition was delayed by complications resulting from his Meniere's disease.[7] The deputy commissioner found that it was June 1, 1979 before the claimant reached a point where his hearing loss had become disabling and he was required to seek medical attention.[8] He therefore concluded that June 1, 1979 was the date of the "accident," so that the claim filed on April 22, 1981 was timely. Reversible error has not been shown on this point.
*166 In view of our resolution of the issues above discussed, issues regarding the award of future medical care, attorney's fees and costs, are rendered moot.
One other matter requires further adjudication by the deputy commissioner. By order dated November 24, 1981, the deputy commissioner ordered that should compensation benefits be awarded to the claimant, the claimant would be required to reimburse the E/C from those benefits for expenses incurred by the E/C in preparation for and attendance at a hearing scheduled November 19, 1981, at which the claimant failed to appear. Although the claimant insists that recovery of these expenses should be barred because the E/C failed to present evidence of those expenses, we disagree. The earlier order awarding costs and expenses was on a matter separate and distinct from the issues involved at the hearing on the merits. Although we have on several occasions declined to grant relief as to matters which should have been raised at the hearing, or within the thirty day period following entry of the order within which errors or omissions can be corrected, this order stands on a different footing. Accordingly, upon remand the E/C shall be entitled to present evidence and the deputy commissioner shall make such award as appears appropriate with respect to these costs and expenses.
The order appealed from is AFFIRMED on the merits, and REMANDED for further proceedings with respect to costs and expenses to be awarded pursuant to the order of November 24, 1981.
SHAW and JOANOS, JJ., concur.
NOTES
[1] The three-pronged test of Festa v. Teleflex, Inc., 382 So.2d at 124 is as follows: "In summary, for a claimant to recover under the exposure theory of accident, he must show 1) prolonged exposure, 2) the cumulative effect of which is injury or aggravation of a pre-existing condition and 3) that he has been subjected to a hazard greater than that to which the general public is exposed."
[2] The claimant was also diagnozed as suffering from Meniere's disease, a symptom of which is dizziness, which was found to be not work-related.
[3] The deputy commissioner found, based upon the testimony of the claimant and Dr. Barranco, that the noise exposure described by the claimant over a twenty-three year period presented a particular hazard of hearing loss, distinguishable from, and in excess of usual occupations, a finding which he further based upon the doctor's testimony that it is common knowledge that factories have a higher noise level than the usual occupation.
[4] The presence of medical evidence that the claimant's hearing loss was due to noise trauma distinguishes this case from D'Avila, Inc. v. Mesa, 381 So.2d 1172 (Fla. 1st DCA 1980). In D'Avila, the issue of causation was resolved against the claimant, where there was no medical evidence that the claimant's chronic asthma was actually caused by polyester particles. As pointed out in the opinion, the doctors "merely assumed" a causal relation, yet there was no test to determine if polyester particles were actually present in her lungs, and the only test for polyester allergies proved negative. Id. at 1173. Further, the concentration of polyester particles in the work site was not shown to exceed acceptable standards, and other causes for claimant's condition were just as likely.
[5] We find a parallel, on this point, in occupational disease cases, to which exposure cases are closely related, holding that a specific chemical test is not an essential to proof of a causal relation between a disease condition and conditions on the job site. Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902, 905 (Fla. 1st DCA 1981); King Motor Co. v. Pollack, 409 So.2d 160, 164-165 (Fla. 1st DCA 1982); Smith v. Crane Cams, Inc., 418 So.2d 1266 (Fla. 1st DCA 1982).
[6] Cf., Hillsborough County School Board v. Bigos, 396 So.2d 848 (Fla. 1st DCA 1981) (causal connection between teaching employment and infectious hepatitis not shown where medical witnesses could not determine whether teacher contracted the disease from student, or vice versa).
[7] It was actually May of 1981 before Dr. Barranco became convinced that claimant's hearing loss resulted from noise trauma.
[8] The deputy commissioner's determination of the date when the statute of limitations begins to run is in accord with American Beryllium Co. v. Stringer, 392 So.2d 1294 (Fla. 1980), holding that it is the date of disability, in occupational disease cases, not the date of the disease, that fixes the time of "accident," for purposes of complying with the two-year limitation upon the filing of claims. No reason has been suggested why the same rule should not apply in exposure cases.