ROBERT P. SMITH, Jr., Judge.
The Department of Agriculture, employer of this injured claimant, urges that the deputy erred in holding the claim not barred by the two-year statute of limitations, section 440.19(2)(b), Florida Statutes (1979). The issue arises on an order for the payment of medical benefits alone, on account of surgery and other services required for treatment of claimant’s detached retina. Claimant, a livestock specialist engaged in brucellosis testing, sustained this eye injury in June 1980 when he was trampled and knocked unconscious.
According to the deputy’s finding, which the employer doubts, claimant’s retinal detachment was aggravated some months after his initial injury, in January 1981, when handling other cattle claimant took another blow to the head. The sticking point is that, despite the undoubted injury in June 1980, claimant’s retinal detachment remained asymptomatic, and his eyesight unimpaired, until the summer of 1982. The deputy’s order noted medical testimony that it is “not uncommon to have a long delay between the initiating event and the appearance of symptoms in such cases.” And so this claim for medical benefits was not filed until October 1982, soon after the injury was diagnosed and treated by surgery. The employer last provided remedial attention for the June 1980 injury, by paying a drug bill not associated with the unknown retinal injury, in September 1980.
The question, then, is whether the two-year statute, section 440.19(2)(b), began running no later than when that remedial attention was last voluntarily furnished for the June 1980 injury, and so barred the October 1982 claim, or ran from the disputed aggravation in January 1981, and so did not. The deputy likened this case to those involving an “occupational disease,” American Beryllium Company v. Stringer, 392 So.2d 1294 (Fla.1980), or to those involving “repeated exposure,” Food Machinery Corp. v. Shook, 425 So.2d 163 (Fla. 1st DCA 1983), and reasoned that the statute of limitations should not be considered as running until this claimant’s disability was manifest. Without laboring the point, we agree with the employer that the award may not be so predicated; that the criteria for “occupational disease” or “repeated exposure” awards, discussed in the cited decisions, are not satisfied.
Alternatively, claimant urges that if the statute of limitations would otherwise bar his claim two years after his initial injury or after the last provision of remedial attention by the employer, the statute is unconstitutional as applied, for it operates to bar the claim before claimant could reasonably have been expected to discover and perfect his claim. We need not reach this constitutional issue.
Only medical benefits are at issue here, for claimant now receives permanent total disability benefits on account of an entirely unrelated industrial injury to his back in January 1981. Because of that circumstance, the present limitations question *299 may be considered without concern for how a claim for benefits other than medical benefits, arising from an eye injury unknown for nearly two years, would be affected by long-standing limitations doctrine.
The October 1982 claim for medical benefits was not barred because, as the deputy found on substantial competent evidence, the 1980 retina injury was aggravated by the second blow to the head in January 1981. As the claim was filed well within two years from the second causative event, the claim was timely. We have here no occasion for apportionment, even if we are to assume that a latent retinal detachment in June 1980, compensable except for the limitations statute, is “a preexisting disease or anomaly” within the meaning of section 440.02(18). That statute requires apportionment, only “with respect to death or permanent impairment” benefits. On that general subject, see the seminal decision Evans v. Florida Industrial Comm’n., 196 So.2d 748 (Fla.1967).
Though we therefore reserve certain of the questions addressed by the deputy and by counsel’s briefs, it seems appropriate that we respond directly to claimant’s argument that the limitations statute, § 440.-19(2)(b), begins the two-year period only upon the manifestation of claimant’s retinal detachment, not earlier when it occurred. That argument goes like this: The limitation on claims for “remedial attention,” like the limitation on claims for “compensation for disability, impairment, or wage loss” stated in 440.19(2)(a), runs from “the time of injury”; the “time of injury” is defined by 440.02(17) to mean “the time of the occurrence of the accident resulting in the injury”; and the term “accident” as so employed is defined by 440.02(18) to mean “an unexpected or unusual event or result, happening suddenly” (emphasis added). Therefore, it is said, since the unusual “result” of claimant’s bout with the cows in June 1980 was that he suddenly lost some central vision in the summer of 1982, the limitations statute did not begin running until that occurred.
Though claimant’s argument resourcefully exploits the convoluted words-within-words of the definitional section in chapter 440, the argument does not bear analysis. It hinges upon the idea that the legislation which added “or result” to the antecedent “unexpected or unusual event” in 440.02(18) postponed the running of the limitations statute until the occurrence of postponed pathological sequelae following the accidental “event” which triggered chapter 440 coverage. But chapter 28238, Laws of Florida (1953), which added “or result” to 440.02(18) [then (19)], Fla.Stat. (1951), had no such purpose or effect. Plainly that legislation simply put an imprimatur on the Supreme Court’s recent decision, Gray v. Employers Mut. Liability Ins. Co., 64 So.2d 650 (Fla.1953), which awarded compensation to a waitress whose arm was injured when she picked up a can of waffle batter.
The Gray issue was compensability notwithstanding the absence of an “accidental event” in the narrow sense of a “slip, fall or misstep.” Ameliorating the apparent restriction in such decisions as Brooks-Scanlon, Inc. v. Lee, 44 So.2d 650 (Fla.1950), the Gray court said “[i]t is enough then, if there is an unexpected result, even though there was no unexpected cause, such as a slip, fall or misstep, in order to constitute an ‘accident’ ” covered by 440. 64 So.2d at 651. That decision, and the confirming legislation that soon followed, would be useful to assure claimant compensation if his employment-related retinal detachment did not result from an unexpected “cause,” which the trampling obviously was; but those authorities do not postpone the running of the limitations period until the accident suddenly yields new manifestations two years later. In this respect Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla.1952), still survives, notwithstanding that limitations statutes running from the “accident” rather than from the later manifestation of latent injury may justly be condemned as an “irrational cruelty.” LARSON’S WORKMEN’S COMPENSATION LAW § 78.42(b) et seq. (1983).
*300 Though this claimant would not easily be rid of limitations problems if his present claim arose solely from his June 1980 accident, his claim for medical benefits is yet compensable, as we have said, because it was made within two years of the second causative accident in January 1981.
We now address the parties’ arguments on the significance of the January 1981 accident as an aggravation causally related to the medical benefits sought. Medical testimony before the deputy established that “when retinal detachments are contained [as was claimant’s, so the medical examination showed], ... secondary and further trauma can easily cause that situation to decompensate.” In other words, said the physician,
[T]o me it’s quite reasonable to conclude from medical evidence that both episodes of trauma, the June 23, 1980, and the January 19, 1981, had significant contributory relationships to the predicament that he found himself in as far as his visual loss, secondary to retinal detachment.
The employer correctly points out that its cross-examination of the physician was effective; that the physician appears to have conceded that he “cannot state with a reasonable degree of medical probability that [the January 1981 head trauma] was, in fact, involved_” But the physician elaborated:
I think it’s quite possible that if there were demarcation lines at the time that the January, 1981, incident occurred, that this incident could have caused those demarcation lines to break just as dams break and fluid flows through dams. It is also quite possible that the January, 1981, incident could have had nothing whatsoever to do with the natural progression of this detachment, and it would have progressed anyway.
This testimony is sufficient to support the deputy’s finding that claimant’s retinal detachment, initially caused by the blow to his head in June 1980, “was probably aggravated by the events in January 1981.” While the critical causation finding might more appropriately have been expressed by the factfinder as a fact, rather than as a probable fact, we regard his expression as equivalent.
Where as here the latent injury is by its nature so obviously susceptible of aggravation and acceleration, and is also progressive in effect without aggravation, expert medical testimony concerning the putative aggravating event must necessarily be as circumspect as it was in this case. Such circumspection on causation no more renders the medical opinion incompetent than would medical certitude, in other circumstances, be excluded as invading the fact-finder’s prerogative. Delap v. State, 440 So.2d 1242 (Fla.1983); Carraway v. Armour and Co., 156 So.2d 494 (Fla.1963); 7 Wigmore, Evidence (Chadbourn rev. 1978) § 1976; 2 Jones on Evidence (6th ed. 1972) § 14:29. See also Nelson v. Hebrew Home for Aged, 276 So.2d 468 (Fla.1973); Matott v. Ward, 48 N.Y.2d 455, 423 N.Y.S.2d 645, 399 N.E.2d 532 (1979).
Because the doctor’s opinion was competent evidence, the deputy was well within his power in crediting it, with the other medical history, in finding a causal relationship between the January 1981 accident and claimant’s medical needs in the summer of 1982. Palardy v. Dura-Clad Systems, 381 So.2d 347 (Fla. 1st DCA 1980), app. dism., 385 So.2d 756, might nearly be proof that the deputy was obliged to find the contested causation, but we need not go so far. For deciding close causation questions on inconclusive evidence is peculiarly the task of the trier of facts, as the dissent argued in Palardy. We should not be surprised if this deputy, like jurors in other cases, was influenced by a statute of limitations that would otherwise bar a meritorious claim of which claimant had no knowledge during much of the limitations period. Such influences are inevitable in close calls, and for those the trier of facts must accept responsibility; but they are not our concern on appeal.
AFFIRMED.
*301 WIGGINTON, J., concurs.
BOOTH, J., concurs specially with an opinion.