451 So.2d 968 (1984)
DEPARTMENT OF CORRECTIONS, Avon Park Correctional Institute and Division of Risk Management, Appellants,
v.
Maurice LUSSIER, Appellee.
No. AV-166.
District Court of Appeal of Florida, First District.
June 12, 1984.
Rehearing Denied July 18, 1984.
Kurt Preston Hampp, of Jacobs, Robbins, Gaynor, Burton, Hampp, Burns, Cole & Shasteen, P.A., St. Petersburg, for appellants.
Kimberly S. Brush, of W. James Kelly, P.A., Lakeland, for appellee.
WIGGINTON, Judge.
The employer/carrier appeal from the deputy commissioner's order awarding benefits, in which the deputy found a causal connection between claimant's employment and his condition of chronic hepatitis. We reverse.
Claimant was a dentist employed at the Avon Park Correctional Institute when it was first diagnosed that he suffered from Non A Non B hepatitis. In pursuing his claim for compensation benefits, it was claimant's position that he contracted the disease from a prison inmate, on whom claimant had performed dental surgery. It was alleged that at the time claimant was treating him, the inmate was suffering from an acute case of hepatitis. Claimant developed symptoms of hepatitis approximately three months later. The deputy based his finding of causal relationship on the deposition testimony of claimant's treating physician, Dr. Dabir Ahmad Siddiqui, a gastroenterologist, who, in response to a hypothetical question, replied,
If the man on whose tooth Dr. Lussier worked had a viral hepatitis and if within *969 the time limit described Dr. Lussier does show signs, symptoms or evidence of hepatitis with clear-cut contact, then I think a cause and effect relationship can be made.
Unfortunately, Dr. Siddiqui's opinion presumed a fact yet to be proved, and not later proven, and for that reason, was an insufficient foundation on which the deputy could base his conclusion of causal connection.
According to the medical testimony, and it was uncontradicted in this regard, for claimant to have contracted Non A Non B hepatitis from the inmate, the inmate would necessarily have had to have been suffering from that same strain. However, during the time that the inmate was ill with hepatitis, no blood tests were performed to establish from what particular type of hepatitis the inmate suffered. Moreover, it was also undisputed that there was no way within reasonable medical probability to test for Non A Non B hepatitis. Non A Non B hepatitis may be diagnosed only through the process of exclusion; that is, one can only diagnose Non A Non B hepatitis if there is laboratory evidence of hepatitis, but no serological evidence of either type A or type B hepatitis.[1] Later blood tests performed on the inmate revealed signs of his having had both type A and type B hepatitis in the past.
Consequently, it was vital to claimant's case that he prove that the inmate suffered from Non A Non B hepatitis. There being absolutely no medical evidence attesting to that fact ever presented, Dr. Siddiqui's opinion was insufficient to that end, as it was nothing more than a conclusion based on a fact not in evidence. An expert's opinion "is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion." Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla. 1960); see also Arkin Construction Company v. Simpkins, 99 So.2d 557 (Fla. 1957).
Accordingly, claimant's case and the deputy's conclusion were based on little more than a "preponderance of probabilities." As to that, the supreme court held in Harris v. Josephs of Greater Miami:
In cases involving diseases or physical defects of an employee as distinguished from external occurrence to an employee such as an automobile accident claimant must prove a causal connection other than by merely showing that it is logical that the injury arose out of claimant's employment or that by a "preponderance of probabilities" it appears that it arose out of such employment. There must be some clear evidence rather than speculation or conjecture establishing a causal connection ...
Id. As claimant has failed to show by clear evidence that the inmate had Non A Non B hepatitis when claimant was treating him, we hold the deputy commissioner erred in finding a causal relationship and, therefore, in awarding compensation benefits.[2]See *970 Hillsborough County School Board v. Bigos, 396 So.2d 848 (Fla. 1st DCA 1981); but compare factually Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981).
REVERSED.
MILLS and SHIVERS, JJ., concur.
NOTES
[1] Dr. James Olsen, Director of Health Services for the Department of Corrections, explained the various forms of hepatitis. Hepatitis A, formally termed infectious or short incubation period hepatitis, is transmitted through oral/fecal contamination. It has an incubation period of 15 to 45 days.

Hepatitis B, formerly known as serum or long incubation period hepatitis, is contracted through blood, blood products, or secretions of the body through intimate contact. It has an incubation period of 30 to 180 days.
Non A Non B hepatitis is actually a group of approximately 15 viruses, any one of which will result in the illness, and for which there are no tests to allow for specific diagnosis. Thus, it is diagnosed through exclusion, i.e., where there is no finding of hepatitis, but there are clinical symptoms of hepatitis, then the patient's condition is diagnosed as Non A Non B hepatitis. Non A Non B hepatitis has the same incubation period as does type B, and is similarly transmitted. Also, Non A Non B hepatitis may be subclinical, in that the carrier may appear to be suffering merely from a common cold.
[2] This case is distinguishable from Food Machinery Corporation v. Shook, 425 So.2d 163 (Fla. 1st DCA 1983), and Smith v. Crane Cams, Inc., 418 So.2d 1266 (Fla. 1st DCA 1982), cited by claimant. Those cases presented circumstances involving diseases arising from more general conditions, such as the use of chemicals or the exposure to noise levels, rather than from a more specific, medically complex pathogen, as is involved in the instant case. Thus, as pointed out in Shook, the logical cause doctrine is applicable in cases where the disease is caused by a general condition obviously endemic, by a layman's standards, to the claimant's place of employment.