MILLS, Judge.
Hamilton appeals from a workers’ compensation order which denied the compens-ability of her claim. She asserts, among other things, error in the deputy commissioner’s finding that her duties did not change significantly prior to the onslaught of her pain and the deputy commissioner’s acceptance of Dr. Harrison’s opinion regarding causation over that of Dr. Pell. We affirm the order.
Hamilton began work with Stamas Yachts, the E/C herein, as a finisher of commercial yachts in 1981. Her duties as a *231 finisher included sanding and buffing the exterior of boats to improve their cosmetic appearance. In mid-1981, Hamilton also began to do grinding work for the E/C. Grinding involves the removal of rough edges on various parts of the boat, and the particles emitted during grinding are larger and courser than during sanding. Hamilton continued her duties of grinding, which varied from doing the activity as much as every day to once a week, until October of 1981 when she stopped her employment due to facial pain. Hamilton’s pain began as a type of toothache and progressed until the entire right side of her face was in extreme pain.
Hamilton was unable to work for the E/C from October of 1981 through October of 1982. When her pain subsided, Hamilton returned to work and resumed her duties of sanding and grinding. However, pain once again ensued and Hamilton left her employment from February 1983 through April 1983.
At the time of her return to work in 1983, Hamilton’s pain had once more subsided and it has not been that severe since. Hamilton has continued her finishing work with the E/C, with the exception that she no longer performs the grinding function.
Hamilton sought treatment for her condition from numerous doctors, most notably Drs. Harrison and Pell. Dr. Harrison, a neurologist, examined Hamilton while she was disabled in 1982. He diagnosed that she was suffering from atypical facial neuralgia which is a vascular pain in the face similar to a migraine. Dr. Harrison was unsure of its etiology, but stated he did not think it was related to her work environment.
Dr. Pell, a specialist in internal medicine, examined Hamilton in 1985 after her symptoms had stopped. Based on his review of Hamilton’s medical records, a physical exam, and materials covering the chemicals she was exposed to on the work site, Dr. Pell opined that Hamilton suffered from maxillary sinusitis triggered by her reaction to either fiberglass dust or methyl ethyl ketone peroxide.
Hamilton filed a claim for temporary total disability benefits and medical treatment, and a hearing was held on the issue of compensability on 5 September 1985. On 4 October 1985, an order was entered finding no entitlement to benefits, as Hamilton did not show a sufficient connection between her medical problems and her employment. In this regard, the deputy ruled that Hamilton did not experience a change in duties at the time her symptoms began, and he accepted the medical opinion of Dr. Harrison over that of Dr. Pell. This timely appeal followed.
Although not an issue raised by the parties directly, in this court’s opinion the crux of this appeal turns on whether Hamilton has established the necessary elements to recover under either the theory of exposure or the theory of occupational disease. See, Section 440.151, Florida Statutes (1983). As to exposure, in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980), this court established the following three pronged test: (1) the claimant must have had a prolonged exposure; (2) a causal relationship must be established between the exposure and the injury or aggravation; and (3) the claimant must establish that he or she has been subject to a hazard greater than that to which the general public is exposed. Accord, Food Machinery Corp. v. Shook, 425 So.2d 163 (Fla. 1st DCA 1983).
In Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981), a four-factor test was outlined that must be proven before a claimant can recover for an occupational disease:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in *232 the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
See also, Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981); King Motor Co. v. Pollack, 409 So.2d 160 (Fla. 1st DCA 1982).
Both tests share the common element of causation, which the deputy commissioner in the instant case found was lacking. Hamilton attempted to establish that it was the exposure to chemicals in her work place that was the cause of her facial pain through the testimony of Dr. Pell. The deputy commissioner found Dr. Pell’s testimony insufficient in this regard because the doctor was unable to identify exactly what was causing Hamilton’s problems.
As pointed out in the following language from Harris v. Josephs of Greater Miami, 122 So.2d 561, 562 (Fla.1960):
In cases involving diseases or physical defects of an employee as distinguished from external occurrence to an employee such as an automobile accident claimant must prove a causal connection other than by merely showing that it is logical that the injury arose out of claimant’s employment or that by a “preponderance of probabilities” it appears that it arose out of such employment. There must be some clear evidence rather than speculation or conjecture establishing a causal connection between a claimant’s injury and her employment. (Emphasis in original).
Accord, Lake v. Irwin Yacht & Marine Corp., supra; Department of Corrections v. Lussier, 451 So.2d 968 (Fla. 1st DCA 1984).
We find the testimony of Dr. Pell does not satisfy this standard. The doctor opined that Hamilton’s condition was related to her exposure to chemicals at work; however, the doctor made this statement without having conducted any tests to establish its truth. Compare, King Motor Co. v. Pollack, supra. Dr. Pell’s “best educated guess” was that Hamilton’s symptoms were “probably” triggered by finely powdered fiberglass dust. This is not competent evidence of causation.
It was not necessary for Dr. Pell to state exactly what chemicals caused the claimant’s condition, King Motor Company v. Pollack, supra, but more was needed than an opinion that it is logical to assume by looking at the chemicals in Hamilton’s work environment that they were the culprit. It should also be pointed out that Dr. Pell and Hamilton both admitted that no one else working in similar environments had ever related complaints like those the claimant experienced.
Accordingly, we uphold the finding of no causal connection and affirm the order.
BOOTH, C.J., concurs.
WENTWORTH, J., agrees to conclusion.