967 So.2d 244 (2007)
James R. HUFF, Jr., Appellant,
v.
LORAL AMERICAN BERYLLIUM CO., and its successor, Lockheed Martin Corp. and CNA ClaimPlus and ACE USA/ESIS, Appellees.
No. 1D06-4466.
District Court of Appeal of Florida, First District.
August 31, 2007.
Rehearing Denied October 29, 2007.
Keith A. Mann, Sarasota, and Bill McCabe, Longwood, for Appellant.
James M. Hess and Margaret E. Sojourner, Maitland, for Appellees Lockheed Martin and ACE/ESIS, and Cindy R. Galen of Eraclides, Johns, Hall, Gelman, Johanessen & Kempner, L.L.P., Sarasota, for Appellees Loral American Beryllium Co. and CNA ClaimPlus.
KAHN, J.
We have for review a workers' compensation case brought under the prolonged exposure theory of injury. Our determination here turns upon our fleshing out the meaning of "injury," as the term is used in the second prong of the well-known test formulated in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980). Because claimant has demonstrated an injury, we reverse the order of the judge of compensation claims ("JCC"), which found to the contrary.

BACKGROUND
Claimant James Huff began working for Loral American Beryllium ("LAB") in 1979 as a tool cutter and grinder. Huff regularly worked on tools covered in beryllium dust. Huff remained in his position after Lockheed Martin purchased the plant in April 1996. On September 26, 1996, Lockheed closed the plant. Although Huff worked for various, subsequent employers, he was never exposed to beryllium dust after being laid-off by Lockheed.
In August 2004, the Department of Labor interviewed all former employees of LAB and Lockheed and offered to test the employees' blood for potential work-related disorders. Huff tested positive for beryllium sensitivity. Dr. Stuart Brooks, an independent medical examiner for the employers, described beryllium sensitivity:
Beryllium sensitivity is the presence of an immunological responsiveness to a beryllium antigen by the body, which is characterized by what's called a delayed hypersensitivity reaction. The lymphocytes have recognition. So to kind of put it in a different perspective, we have in our body clones of lymphocytes, and these clones can maybe recognize, you know, thousands of different things.
Each of the doctors in this case believes that Huff has beryllium sensitivity, as defined above, and as further characterized as an immunological responsiveness to a beryllium antigen by the human body. These doctors, however, differ upon whether Huff has the more serious condition *246 of chronic beryllium disease. As a result of his beryllium sensitivity, Huff received two medical directives. First, he may no longer work in an occupation with risk of beryllium exposure. Second, he should undergo regular medical testing or monitoring to determine whether the beryllium sensitivity has advanced to a state of chronic beryllium disease.
By a petition for benefits, Huff claimed entitlement to monitoring and treatment of beryllium sensitivity. The employers raised various defenses, including a claim that Huff did not yet have chronic beryllium disease and, therefore, had not suffered an injury, for purposes of workers' compensation law.
As discussed below, workers' compensation claimants who have suffered exposure to deleterious substances, as opposed to a discrete industrial accident, may proceed on two different theories of accidentoccupational disease or prolonged exposure. In the present case, Huff's attorney elected to go forward only on the prolonged exposure theory. Applying the law as established by this court in Festa, the JCC determined that Huff satisfied the first and third prongs necessary under a prolonged exposure theory: Huff demonstrated a prolonged exposure to beryllium, having worked around that substance for some seventeen years; and Huff demonstrated he was subjected to a greater hazard than that to which the general public is exposed. The JCC was then left to determine whether Huff had satisfied the second Festa prongthat the cumulative effect of prolonged exposure has been injury or aggravation of a pre-existing condition. As to this prong, the JCC concluded that Huff "has not established that he has suffered either an accident or an injury." The JCC analogized the present claim to the case of Florida Power Corp. v. Brown, 863 So.2d 364 (Fla. 1st DCA 2003), where this court determined that exposure alone to asbestos did not result in a workplace injury.

ANALYSIS
As we have noted, Huff proceeds in this case solely on the theory of prolonged exposure under Festa. Huff abandoned his initial claim for compensation due to an occupational disease. An occupational disease claim is statutory. See § 440.15, Fla. Stat. (1995). Moreover, under a claim of occupational disease, a claimant must demonstrate disablement, as a threshold to any recovery. See City of Port Orange v. Sedacca, 953 So.2d 727, 733 (Fla. 1st DCA 2007).
Examining the prolonged exposure theory, the JCC found that, as a result of exposure to beryllium, Huff's body has undergone physiological changes, described by the JCC as "a process by which lymphocytes demonstrate that exposure to beryllium has occurred." The JCC also accepted the testimony that Huff may no longer work around beryllium. The JCC, however, determined that Huff does not have the pulmonary conditionchronic beryllium diseasesometimes associated with beryllium exposure. The undisputed medical testimony, not questioned by the employers on this appeal, establishes that Huff requires periodic monitoring and testing in the future in order to determine whether his beryllium sensitivity has progressed into chronic beryllium disease. Nevertheless, because Huff does not have the disease, the JCC concluded that no injury by accident had occurred.
In Florida Power Corp. v. Brown, the claimant proceeded under a theory of occupational disease. Reversing a JCC finding in favor of claimant, this court found "no evidence Brown has suffered any disability from his exposure [to asbestos]." Id. at 365. Brown, however, does not control for *247 at least two reasons. First, Mr. Brown proceeded under an occupational disease theory and, accordingly, needed to demonstrate disability. Second, the Brown opinion does not indicate any objective changes comparable to the lymphocytes noted by the physicians in the present case. This court characterized Brown's claim as "exposure to asbestos, standing alone." Id. Accordingly, the JCC was mistaken in her reliance upon Brown.
To support the theory of recovery here, claimant needed to provide proof that an injury has occurred. A mere exposure, standing alone, will not suffice. Here, Huff did not simply argue that he was exposed to beryllium. The various doctors unanimously agreed that Huff is inflicted with beryllium sensitivity, that this sensitivity is objectively determined and, as a consequence he may never again work around beryllium. The medical testimony also established, as a direct result of his beryllium sensitivity, a need for periodic medical monitoring. As Huff presented unrefuted medical testimony and evidence that his beryllium sensitivity caused an objective and verifiable change in his body that requires medical treatment, he has satisfied Festa's "injury" prong.
Our finding of injury here is consistent with the statute delineating an employer's responsibility to furnish workers' compensation benefits. Under that statute, the injury "must be established to a reasonable degree of medical certainty, based on objective relevant medical findings." § 440.09(1), Fla. Stat. (2005). Objective medical findings clearly exist in the present case. Although Huff does not complain of pain, he does assert that he is unable to work around beryllium, as he formerly did. Though subjective complaints alone will not support compensation, an award may be supported by objective relevant medical findings. Id. Further, under the statute, such objective findings are those "confirmed by physical examination findings or diagnostic testing." Id. As detailed above, diagnostic testing has confirmed physiological changes determinative of beryllium sensitivity. Accordingly, the injury in this case falls within the contemplation of section 440.09(1), Florida Statutes (2005).
We REVERSE the order on appeal and REMAND this case for entry of an order finding compensability and awarding appropriate medical benefits.
BENTON and VAN NORTWICK, JJ., concur.