394 So.2d 1117 (1981)
BROWARD INDUSTRIAL PLATING, INC. and Risk Management Services, Inc., Appellants,
v.
Richard WEIBY and the Travelers Insurance Company, Appellees.
No. XX-125.
District Court of Appeal of Florida, First District.
March 11, 1981.
*1118 H. George Kagan of Miller, Hodges & Kagan, Miami, for appellants.
Richard A. Barnett of Krupnick & Campbell, Fort Lauderdale, for appellee Richard Weiby.
Michael C. Spring of Carey, Dwyer, Cole, Selwood & Bernard, Miami, for appellee Travelers Ins. Co.
THOMPSON, Judge.
The appellants challenge a workers' compensation Order, arguing in part that the Deputy Commissioner ("the Deputy") erred in finding that the claimant's illnesses were occupational diseases. We agree and reverse.
The claimant worked for the employer from April 1978 to May 1979. His job involved anodizing aluminum, which consisted of dipping aluminum into tanks that contained various chemical solutions. The claimant testified that the facility was poorly ventilated, and he complained that chemical fumes rose to his face and caused discomfort upon being inhaled.
The claimant stated that he never experienced respiratory problems until he began working for the employer. However, the record clearly shows that the claimant contracted bronchial asthma as a child and that he stated to two treating physicians that he had breathing difficulties in 1977 (i.e., prior to his work with the employer herein).
From December 1978 to July 1979, the claimant was hospitalized 5 times for examination and treatment of his respiratory difficulties. During each hospitalization, bronchial asthma was diagnosed by doctors. Dr. Sherman, an internal specialist, testified that numerous factors can cause such a condition to occur, and he could not say that the claimant's work conditions caused his bronchial asthma. However, Dr. Sherman essentially testified that those work conditions aggravated the claimant's respiratory problems.
In October 1979, the claimant's hands started to swell and turn numb. Dr. Porth, an orthopedic surgeon, diagnosed vasculitis, and he thought that this condition was a delayed but direct result of exposure to noxious gases at work.
In 1980, the Deputy entered his Order, finding in part that the claimant's bronchial asthma and vasculitis were occupational diseases.
*1119 Under § 440.151, Fla. Stat., the following elements must be proven by a claimant to show that he is entitled to compensation for an occupational disease:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
See § 440.151(1)(a) and (2). See also Florida State Hospital v. Potter, 391 So.2d 322 (Fla. 1st DCA 1980); Cast Crete Corp. v. Duncan, 383 So.2d 245 (Fla. 1st DCA 1980). In determining whether the claimant has satisfied the preceding statutory requirements, there is no presumption that the claim for compensation comes within the provisions of the occupational disease statute. See § 440.151(1)(e). In this case, the claim did not fall within the provisions of that statute.
The claimant has failed to prove at least two of the foregoing elements. First, he has not shown that his occupation presents a particular hazard of bronchial asthma occurring so as to distinguish his occupation from usual occupations. Nor has he demonstrated that the incidence of bronchial asthma is substantially higher in his occupation than in usual occupations. These statements also apply to the claimant's vasculitis.[*]
Second, the claimant has not shown that the incidence of bronchial asthma, which is an ordinary disease of life, was substantially higher in his occupation than in the general public. In fact, the testimony of the plant's owner, the plant manager, and the claimant himself, readily indicate that no respiratory problems were experienced by other employees in the past or present. See Potter, 391 So.2d at 323.
While it is clear that the claimant's illnesses are not occupational diseases within the highly restrictive terms of § 440.151, Fla. Stat., the record does suggest the possibility that the claimant has suffered an aggravation of a pre-existing asthmatic condition, which would be governed by § 440.02(18), Fla. Stat. Similarly, the record does suggest the possibility that the claimant's vasculitis may be compensable under the exposure theory of accident discussed in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980). We remand these matters to the Deputy for his consideration. See Duncan, 383 So.2d at 247.
The appellants have also raised two other issues that must be addressed herein. One issue is whether the Deputy erred in admitting into evidence the deposition of Dr. Patel. One day before this deposition was taken, the carrier's counsel first received notice of the deposition, and they *1120 informed claimant's counsel that they would be unable to attend. Despite this fact, claimant's counsel took Dr. Patel's deposition, noting that the carrier would be given an opportunity to depose Dr. Patel in the future. When Dr. Patel's deposition was offered into evidence, the carrier's counsel objected. The Deputy later admitted the deposition into evidence. The appellants argue that the Deputy's action was erroneous, and we agree.
Fla.R.Civ.P. 1.310(b) requires that reasonable notice of a deposition shall be given to all parties. Here, notice was given to the carrier one day before the deposition was taken. This notice was unreasonable, and Fla.R.Civ.P. 1.330(a) only allows a deposition to be used against a party who was present or represented at the taking of the deposition or who had reasonable notice of it. These factors are absent here. Moreover, the fact that the claimant's counsel offered to allow the carrier's counsel to take Dr. Patel's deposition is meaningless  Dr. Patel was deposed by the claimant, and the carrier was denied an opportunity to cross-examine Dr. Patel. Finally, although Fla.R.Civ.P. 1.330(d) provides that "[a]ll errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice," this provision clearly relates to the contents of the notice  not the time that the notice is served in.
Another issue raised by the appellants is whether the Deputy erred by ordering them to pay for various medical treatment which apparently was neither requested by the claimant nor reported by various doctors and hospitals. In this respect, the Deputy found that this medical treatment was "reasonable and necessary," and he ordered that the appellants pay for such treatment. This ruling was erroneous.
Under § 440.13(1), Fla. Stat., the employer is required to furnish necessary remedial treatment. Before the claimant can procure such treatment for himself at the expense of the employer, he is required to request the treatment. Of course, "[t]here may be circumstances under which a claimant could be excused for his failure to request his employer to furnish him with medical attention." United Electric Co. v. Myers, 134 So.2d 7, 11 (Fla. 1961).
On the record before us, there is nothing to indicate that the claimant requested medical treatment. Apparently, the Deputy excused this failure, based solely on his finding that such treatment was "reasonable and necessary." This finding is meaningless and does not excuse the claimant's apparent failure to request medical treatment. See Atlantic Cold Storage v. Hernandez, IRC Order 2-3071 (Nov. 22, 1976). We remand this matter to the Deputy for appropriate findings as to whether there was a legally acceptable excuse for the claimant's failure to request medical treatment.
Section 440.13(1), Fla. Stat., also requires that within ten (10) days after a physician or hospital furnishes their first remedial treatment to the claimant, a report of the claimant's injury and treatment must be furnished to appropriate entities. The claimant, as well as physicians and hospitals, all share this responsibility, see St. Francis Hospital, Inc. v. Feinberg, 192 So.2d 753, 755 (Fla. 1966), and the failure to satisfy this responsibility renders a claim for medical, surgical, or other remedial treatment invalid, unless the Deputy, "for good cause," excuses such a failure. Of course, "the claimant ha[s] the burden to show good cause," id. In this regard, an employer's refusal to provide medical services is not good cause which excuses the failure to timely submit the required reports, id., nor does the fact that a claim is being contested constitute such good cause. See Hood's Dairy v. Severino, 178 So.2d 588, 591 (Fla. 1965).
Here, the record does not indicate that the reporting requirements of § 440.13(1), Fla. Stat., were satisfied. The Deputy excused this failure, based solely on his finding that the medical treatment was "reasonable and necessary." This finding is meaningless. See Hernandez. We remand this matter to the Deputy for appropriate findings as whether there was good cause *1121 to excuse the failure to comply with the statutory requirements applicable herein.
The Deputy's Order is reversed and this cause is remanded for proceedings consistent with this opinion. On remand, the Deputy shall not consider Dr. Patel's deposition, and he shall rule on the question of whether there was an aggravation of a pre-existing asthmatic condition, as well as whether the claimant's vasculitis is a compensable injury. In making these rulings, the parties should be permitted to present additional evidence if that is necessary to avoid procedural prejudice. See Duncan, 383 So.2d at 247. Finally, we note that if the Deputy should rule in favor of the claimant on remand, he should also determine the respective responsibilities and duties of the two insurance carriers in this case. See § 440.42(3), Fla. Stat. See also Seasons v. O'Day, 379 So.2d 1024 (Fla. 1st DCA 1980).
SHIVERS and SHAW, JJ., concur.
NOTES
[*] The Deputy based his determination of occupational diseases on the finding that the claimant's exposure to the chemical fumes exceeded "that of the general public so as to constitute a particular hazard of the claimant's employment." This is not the standard for finding an occupational disease. The correct test is as follows: Initially, a peculiar and characteristic employment condition (which in this instance, would be exposure to chemical fumes) must actually cause a disease, and this disease must be contracted during employment. If these elements are proven, the claimant must next demonstrate that his occupation presents a particular hazard of the disease occurring so as to distinguish his occupation from usual occupations, or that the incidence of the disease is substantially higher in his occupation than in usual occupations. The failure to demonstrate one of the last two factors (as in this case) precludes a finding of an occupational disease. For example, it may be possible that a condition of employment causes a disease, but the occupation may not present a particular hazard or higher incidence of the disease occurring when compared to other, more typical occupations. In this event, there would be no true occupational disease.