418 So.2d 1266 (1982)
Howard Evan SMITH, Appellant,
v.
CRANE CAMS, INC. and Fireman's Insurance of Newark, Appellees.
No. AF-1.
District Court of Appeal of Florida, First District.
September 8, 1982.
*1268 Frank E. Maloney, Jr., Fort Lauderdale, for appellant.
Charles Desmond Crowley, Fort Lauderdale, for appellees.
ERVIN, Judge.
We reverse and remand the deputy commissioner's order in this workers' compensation case involving two purported occupational diseases. The diseases contracted were forms of dermatitis, and this case is governed by the 1978 Workers' Compensation Act.
Smith was employed by Crane Cams as a screw machine supervisor. He was required to stand and work in unusually dirty oil. Although he had worked with machines for 17 years at other jobs without incident, he began experiencing problems with his fingertips after only a few months at the employer's job site. Smith was sent by his employer to Dr. Geoffrey Siegel, who noted black blotches underneath Smith's nails on his right hand. He diagnosed a bacterial infection known as pseudomonis, which was attributed to the oily conditions at Crane Cams. However, Siegel's associate, Dr. Horowitz, detected a pseudomonis infection of the toenail bed and onychomycosis of the fingernail bed, which is a fungus infection. The onychomycosis was found to be developing secondary to the pseudomonis and was also related to the oily environment at Crane Cams. Horowitz recommended that claimant not return to work for at least four to five months.
During the period that the claimant was undergoing treatment by Horowitz and Siegel, his employer sent him to Dr. Burgess for one consultation visit. Dr. Burgess confirmed the existence of the fungus infection, a condition which causes the patient's nails to separate from the nail beds. He further indicated that the fungus might be causally related as a secondary condition, but was not directly related to the machine oils with which the claimant worked. Burgess felt that the fungus was an ordinary disease of life, often observed in cases involving individuals working in wet or dry conditions.
Dr. Horowitz offered the opinion during his deposition that the fungal infection could happen to anyone, is an ordinary disease of life, and is not normally associated with oily environments. Nevertheless, in direct contradiction to his deposition testimony, Horowitz submitted a chart correlating many dermatological conditions with particular occupations. According to the chart, the onychia fungus is an occupational affliction of machinists caused by grease. Another physician, Dr. Siegel, did not associate the fungus infection with any occupation, but he posited that one holding a job such as that of a machinist, wherein one must immerse his or her hands in water or chemicals, is more subject to onychomycosis.
Regarding the pseudomonis, Dr. Burgess stated that it was a disease more likely to appear in occupations that are irritating to the skin. Dr. Horowitz further amplified upon this testimony, stating that the disease is customarily found in the machinist trade or in jobs, such as baking, bartending or bricklaying, which demand a significant amount of handling of wet objects.
Later, during the hearing, the deputy commissioner heard testimony from two of the employer's supervisors, who had ten years' experience with Crane Cams and forty-four years of experience in the trade, respectively. Both agreed they had never observed or heard of problems in their profession with either the pseudomonis bacteria or onychomycosis fungus. Based on the foregoing evidence, the deputy concluded that the disease was not compensable by applying the test required to determine compensability of occupational diseases. We consider that his findings were incomplete, and remand for further proceedings.
As we have observed on numerous occasions, the four prongs of the occupational disease test are:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;

*1269 (2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902, 904 (Fla. 1st DCA 1981).[1]
As to the first criterion, the deputy found no causal relationship between the oily conditions at the work site and the claimant's fungal infection. The deputy's order suggests that this finding is based on the lack of testing to determine if oils cause the fungus. However, we have previously discounted the need to conduct chemical tests to establish a causal relationship between a disease condition, such as a bacterial or fungal infection, and conditions at the work site or on the job. See King Motor Co. v. Pollack, 409 So.2d 160, 164-165 (Fla. 1st DCA 1982); Irwin Yacht, supra, at 904-905. Because the deputy erred, a re-evaluation of the evidence is necessary.
Since the first prong of the test requires a causal tie between the pseudomonis/onychomycosis and "employment conditions that are characteristic of and peculiar to a particular occupation," we first examine this standard (emphasis supplied). We point out that use of the term "peculiar" does not mean that the hazard or opportunity to contract dermatitis must be unique to the job, or that the disease must be "exclusive to" the particular occupation.[2] It means merely that there must be "an increased risk" to which a claimant is exposed in his or her occupation so as to constitute a hazard or condition distinguishing the job from the broad lines of normal employment. See Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189, 198-199 (1979); Irwin Yacht, supra, at 905. As noted by the North Carolina Supreme Court: "A disease is `characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question." Booker, supra, 256 S.E.2d at 198.[3]
To date at least two Florida cases have found a sufficient tie between contact dermatitis and occupations involving the use of oil. See Boggs v. Tire King, Inc., 5 F.C.R. 213 (1963) (claimant was a mechanic); Bridges v. Standard Oil Co., Inc. of Kentucky, 1 F.C.R. 213 (1955) (claimant suffered eczematous dermatitis, job unknown). We find that, as a matter of law, working with oil as a machinist meets the "characteristic of and peculiar to" criterion of the four-pronged test. However, the first prong requires also establishment of a causal tie between the characteristic and peculiar employment condition and the disease. The deputy made no finding in this regard concerning the pseudomonis. Such a finding appears to be absolutely essential, since the evidence suggests that the fungal infection may have been secondary to the pseudomonis bacterial infection. For example, *1270 our review of the record reveals that Dr. Siegel testified without contradiction that the pseudomonis infection was causally related to the claimant's work with machine oils. Moreover, if the testimony of both Drs. Horowitz and Burgess were accepted by the deputy, he could properly conclude that the fungal infection was related to claimant's use of machine oil. Re-evaluation of this evidence by the deputy for further fact-finding purposes will be necessary.
The second prong of the occupational disease test requires the claimant to establish that the disease was actually contracted during employment. The deputy apparently made no finding on this matter, since he determined that other prongs of the test had not been satisfied, thereby barring compensation. Because a remand is required for re-evaluation of the evidence relating to the other three prongs, we point out that there was evidence before the deputy  as there was as to the first prong  which, if accepted by him, would satisfy the second prong of the test. Thus, the deputy could in his discretion accept the claimant's testimony relating to the development of the bacterial and fungal conditions. It is without question now that a claimant's testimony may be competent to prove a causal relationship between work activities and a compensable condition. This rule of law is entirely pertinent to the occupational disease setting in regard to (1) observable or readily ascertainable conditions such as the formation of black blotches underneath the fingernails and the separation of the nails from the nailbeds, or (2) an establishment of the sequence of events leading to such conditions. See Sanlando Utility Corp. v. Morris, 418 So.2d 389, 392 n. 2 (Fla. 1st DCA 1982); Square G. Construction Co. v. Grace, 412 So.2d 397, 399 n. 2 (Fla. 1st DCA 1982); McCall v. Dick Burns, Inc., 408 So.2d 787, 792 (Fla. 1st DCA 1982); Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981); Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980).
Regarding the third prong of the test, the claimant must show either that the occupation presents a particular hazard of the disease, distinguishing it from usual occupations, or that a substantially higher incidence of the disease exists in the machinist trade than is found in usual occupations. We contrast this prong of the test with the fourth prong, which requires a showing to be made that a substantially higher incidence of the disease is present in the claimant's trade than is found in usual occupations, assuming that the disease is an ordinary disease of life. The deputy found that the claimant's condition was an ordinary disease of life. Drs. Horowitz and Burgess testified that the fungal infection was an ordinary disease of life. To this limited extent we affirm the deputy's finding, as there is substantial competent evidence to support this finding. Cf. Sunlando Utility Corp., supra, at 391. It is not, however, apparent from the record before us that the pseudomonis infection is considered an ordinary disease of life, since no medical expert so testified. Assuming that there is no medical evidence to suggest that the pseudomonis infection is not an ordinary disease of life, claimant need not present proof supporting the establishment of the fourth prong. Careful re-evaluation of the evidence will be necessary on remand to ascertain whether this is so.
Turning to the issue requiring resolution of the third prong, as to whether the incidence of the pseudomonis and fungal infections is substantially higher in the claimant's trade than in usual occupations, we note that Dr. Horowitz stated that trades, such as machinists, by their nature involve the type of environment in which pseudomonis bacteria develops. Dr. Burgess apparently agreed that any work involving skin irritation would subject a worker to the risk of developing pseudomonis. Dr. Siegel testified that a person working as a machinist was much more subject to contract onychomycosis. Although Dr. Horowitz was not prepared to associate this fungus with the machinist trade in his testimony, the chart that he relied upon correlated the occupation of machinist *1271 with the onychia fungus. In such a situation, the deputy has the duty to unravel this paradoxical conflict in Dr. Horowitz's testimony. See Grillo v. Big "B" Ranch, 328 So.2d 429 (Fla. 1976).
There is no dearth of evidence to suggest that the rate of contracting either of these conditions is not substantially higher in the machinist trade than in the usual occupations. Because the deputy found that there was no evidence to satisfy the standard required for both the third and fourth prongs, it is our view that he has overlooked or ignored portions of the record evidence.[4] In Rouse v. Wyldwood Tropical Nursery, 392 So.2d 370, 372-373 (Fla. 1st DCA 1981), we stated that it is normally not necessary for a deputy to explain his findings in regard to contradicting or complicated medical testimony, unless it appears that the deputy has overlooked part of the record. We find no convincing explanation for the deputy's findings pertaining to the incidence of pseudomonis or onychomycosis in the machinist trade. It therefore appears that the findings failed to address critical parts of the medical testimony.
Reversed and remanded for further consistent proceedings.
SHIVERS and WENTWORTH, JJ., concur.
NOTES
[1] Other occupational disease cases of this court applying the four-prong test include: King Motor Co. v. Pollack, 409 So.2d 160 (Fla. 1st DCA 1982), and Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981); cf. Hillsborough County School Bd. v. Bigos, 396 So.2d 848 (Fla. 1st DCA 1981); Florida State Hospital v. Potter, 391 So.2d 322 (Fla. 1st DCA 1981); Cast Crete Corp. v. Duncan, 383 So.2d 245 (Fla. 1st DCA 1980). Not at issue nor addressed in this case is the similar, although distinguishable, "exposure theory" adopted in Festa v. Teleflex, Inc. 382 So.2d 122 (Fla. 1st DCA 1980), rev. denied, 388 So.2d 1119 (Fla. 1980) and also applied in Irwin Yacht, supra.
[2] Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189, 198-199 (1979); Martinez v. University of California, 93 N.M. 455, 601 P.2d 425, 427 (1979).
[3] The North Carolina court's perceptions are persuasive, because its occupational disease statute uses terminology similar to that of Florida's. See N.C. Gen. Stat. § 97-53(13).
[4] We have not overlooked the fact that there is some evidence to suggest that the incidence of these infections in the machinist trade is not any different than in usual occupations. Two of the employer's supervisors stated that they had never observed or heard of a condition similar to the claimant's ailments. Lay testimony of supervisory personnel has been found to be competent in regard to the occupational disease test in at least two other cases. See Weiby, supra, at 1119; Potter, supra, at 323.