# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-0193
_____

SEDGWICK CLAIMS MANAGEMENT
SERVICES, THE GEO GROUP,
INC.,

 Appellants,

 v.

RYAN THOMPSON,

 Appellee.

_____

On appeal from the Office of the Judges of Compensation Claims.
Daniel A. Lewis, Judge.

Date of Accident: December 21, 2020.

September 3, 2025

M. K. THOMAS, J.

The Geo Group, Inc., and Sedgwick Claims Management Services ("E/C"), appeal a final order that determines Ryan Thompson ("Claimant") suffered a compensable, on-the-job accident. It argues the Judge of Compensation Claims ("JCC") reversibly erred by: (1) denying its *Daubert*[1] objection to the

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and codified in section 90.702, Florida Statutes.

admissibility of the report and opinions of the expert medical advisor ("EMA"); and (2) relying upon the EMA opinion to determine a compensable accident occurred.[2] We affirm the JCC's order but write to address a matter of first impression—whether section 440.25(4)(d), Florida Statutes (2020), governing procedures for workers' compensation mediation and hearings, precludes a *Daubert* challenge to EMA opinions. Based on the plain and unambiguous language of the statute, we find that it does.

## I. *Facts*

In 2020, Claimant was employed as a correctional officer and tasked with patrolling the perimeter of the facility in a van. He claimed that the constant turning of his head to survey the grounds caused injuries to his neck and left shoulder. The repetitive trauma claim was initially accepted by the E/C as compensable under the "pay and investigate" provision of section 440.20(4), Florida Statutes. However, within 120 days of acceptance, the E/C denied the claim in its entirety, reasoning that Claimant had not sustained a compensable injury caused by the work activities. Thereafter, Claimant filed a Petition for Benefits ("PFB") requesting compensability of the accident and various indemnity and medical benefits. In response, the E/C again denied compensability of the accident but agreed to pay reimbursement for medications prescribed prior to the initial denial of the claim.[3]

Prior to the final hearing, Claimant filed a notice of conflict in medical opinions between his independent medical examiner ("IME")—Dr. Thomas Roush—and the E/C's IME—Dr. Neil Schechter. In short, Dr. Roush opined that the work accident was

---

[2] The final order on appeal also denied the E/C's defenses under sections 440.09(4) and 440.105, Florida Statutes. The E/C did not appeal denial of the misrepresentation defenses.

[3] The matter was bifurcated for the JCC to first determine compensability of the accident and injuries.

the major contributing cause of Claimant's neck injuries.[4] Dr. Schechter determined that the work activities would not have caused Claimant's injuries because there was no whipping motion involved. The E/C later moved to strike the testimony of Dr. Roush because his opinions were not based on sufficient information to pass muster under *Daubert*. The JCC denied the E/C's motion finding it was nonspecific and failed on the merits. He certified a conflict in medical opinions and appointed Dr. Cameron as an EMA to "break the tie" regarding the causation issue. *See* § 440.13(9)(c), Fla. Stat.

Dr. Cameron provided an EMA report and testified via deposition.[5] He opined that Claimant's injuries could have resulted from anything, even a sneeze in the car. However, in the absence of any other scenario or explanation, he determined that the work activities were the major contributing cause of the neck injuries. Dr. Cameron confirmed he had no evidence that Claimant had sustained a disc herniation, whether traumatic or degenerative, which predated the onset of his symptoms. As such, he causally related Claimant's performance of the work activities to his cervical herniated disc.

The E/C filed a motion to strike Dr. Cameron's EMA report and testimony, raising a *Daubert* objection. In response, Claimant argued that section 440.13(9)(c) dictated that Dr. Cameron's EMA opinion was presumed to be correct unless there was clear and convincing evidence to the contrary, and no such evidence was introduced. Additionally, he asserted that the *Daubert* standard does not apply to EMAs, but even so, Dr. Cameron's testimony was admissible because he had reviewed all records, and the E/C failed to prove that his opinion was not the product of reliable principles and methods.

---

[4] At Dr. Roush's deposition, the E/C raised a *Daubert* objection to the admissibility of his testimony and IME report.

[5] At the deposition, the E/C raised a timely *Daubert* objection to admissibility of Dr. Cameron's report and testimony.

At the merits hearing, the JCC took the *Daubert* motion under advisement and postponed his ruling. After the merits hearing, the JCC entered a final order denying the E/C's *Daubert* challenge to Dr. Cameron's EMA report and testimony. He determined that Dr. Cameron's opinions were the product of reliable principles and methods applied reliably to the facts of the case. Ultimately, the JCC accepted the testimony of Drs. Roush and Cameron as to causation and declared that the repetitive movement at work "was the cause, and the major contributing cause, of the claimant's neck and left shoulder injury or aggravation thereof." The E/C's motion for rehearing and/or reconsideration was denied. This is the E/C's appeal.

## II. *Analysis*

An appellate court reviews under an abuse of discretion standard a trial court's admission or exclusion of expert testimony. *See Booker v. Sumter Cnty. Sheriff's Off./N. Am. Risk Servs.,* 166 So. 3d 189, 194 (Fla. 1st DCA 2015). But "[t]o the extent resolution of this appeal requires statutory interpretation, it is subject to *de novo* review." *MBM Corp. v. Wilson,* 186 So. 3d 574, 576 (Fla. 1st DCA 2016).

The E/C contends that the JCC abused his discretion by admitting the report and testimony of the EMA, Dr. Cameron, over its objection based on section 90.702, Florida Statutes, which codifies the federal *Daubert* standard. In response—although acknowledging that *Daubert* applies generally in Florida workers' compensation cases—Claimant asserts that nothing about *Daubert* or section 90.702 applies to an EMA appointed under section 440.13(9), Florida Statutes. Specifically, section 440.25(4)(d) directs that the report or testimony of an EMA "shall be admitted into evidence," thereby statutorily precluding a *Daubert* challenge. Pursuant to the applicable, amended version of section 440.25(4)(d), we agree.

To determine if a *Daubert* challenge to EMA reports and testimony is statutorily precluded, we begin with the statutory text. "To determine its best reading, we exhaust all the textual and structural clues that inform its meaning." *DeSantis v. Dream Defenders,* 389 So. 3d 413, 418 (Fla. 2024)

4

(internal quotations and citations omitted). Section 440.25 governs "[p]rocedures for mediation and hearings" in workers' compensation proceedings and was last amended in 2003. It now provides, in relevant part:

> When there is a conflict in the medical evidence submitted at the hearing, the provisions of s. 440.13 shall apply. *The report or testimony of the expert medical advisor shall be admitted into evidence in a proceeding* and all costs incurred in connection with such examination and testimony may be assessed as costs in the proceeding, subject to the provisions of s. 440.13.

§ 440.25(4)(d), Fla. Stat. (emphasis added).[6]

---

[6] For context, an EMA physician is the "tiebreaker." *See Snider v. Mumford, Inc.*, 65 So. 3d 579, 581 (Fla. 1st DCA 2011). EMAs are "to assist . . . the [JCCs] within the advisor's area of expertise" and "to provide peer review or expert medical consultation, opinions, and testimony . . . to [a JCC] in connection with resolving disputes relating to reimbursement, [and] differing opinions of health care providers . . . ." § 440.13(9)(a)–(b), Fla. Stat. (2020). Subsection (9)(c) further clarifies that "[t]he opinion of the [EMA] is presumed to be correct unless there is clear and convincing evidence to the contrary as determined by the [JCC]." § 440.13(9)(c), Fla. Stat. (2020). Chapter 69L-30, Florida Administrative Code, governs EMAs and provides the requirements to qualify as an EMA in the workers' compensation forum. Florida Administrative Code Rule 69L-30.003 requires that an EMA must correctly answer 95% of EMA Tutorial review questions, hold valid licensure issued by Florida Department of Health with "clear active" status, be board certified or board eligibility applicable to the specialty, demonstrate experience in assignment of permanent impairment ratings within two years of application, have experience in performing IMEs with documented proof, and have completed twenty hours of continuing medical education within two years of application, among others.

The E/C asserts that the question was previously answered in *State Dep't of Corr. v. Junod*, 217 So. 3d 200, 206 (Fla. 1st DCA 2017), where a *Daubert* objection was successfully applied to render inadmissible an EMA opinion. In *Junod*, this Court commented that "an EMA opinion also must comply with the Florida Evidence Code, including *Daubert*." *Id*. And we have also observed that "[t]he 2013 Legislature has made clear that the admissibility of expert opinions requires that the requirements of *Daubert* be met." *See Giaimo v. Fla. Autosport, Inc.*, 154 So. 3d 385, 388 (Fla. 1st DCA 2014). But the legal question addressed in *Junod* and *Giaimo* was limited to whether the EMA opinions withstood a *Daubert* objection—not whether pursuant to section 440.25(4)(d) its application is statutorily precluded altogether. And any implication otherwise is dicta which plainly cannot control in the face of clear statutory language to the contrary. *See Garcia v. Dyck-O'Neal, Inc.*, 178 So. 3d 433, 436 (Fla. 3d DCA 2015) ("When the clear and unambiguous language of a statute commands one result, as here, while dicta from case decisions might suggest a different result, we must apply the statute so as to give effect to legislative intent."). "When a court makes a pronouncement of law that is ultimately immaterial to the outcome of the case, it cannot be said to be part of the holding in the case." *Lewis v. State*, 34 So. 3d 183, 186 (Fla. 1st DCA 2010).

With the above clarification established, we must, however, recognize and square our reasoning with the holding of *U.S. Sugar Corp. v. Henson*, 823 So. 2d 104 (Fla. 2002). In *Henson*, the supreme court confronted the following certified question:

> IS A JUDGE OF COMPENSATION CLAIMS REQUIRED TO APPLY THE STANDARDS OF *FRYE V. UNITED STATES*, 293 F. 1013 (D.C. CIR. 1923), PRIOR TO ADMITTING EXPERT OPINIONS CONCERNING NOVEL SCIENTIFIC PRINCIPLES OR METHODOLOGIES IN A WORKERS' COMPENSATION PROCEEDING?

*Id*. at 105.[7]

---

[7] After *Henson* was released, the *Daubert* standard, specifically Federal Rule of Evidence 702, controlled the issue of

6

In answering the question affirmatively, the supreme court specifically addressed section 440.29(4), Florida Statutes (2001).[8] For proper context, an understanding of the factual backdrop of *Henson* is necessary. The workers' compensation claim arose from Henson's twenty-eight-year work history with the employer during which he was regularly exposed to pesticide. *Id.* Litigation of the case included the parties calling treating physicians and independent medical experts to testify. *Id.* at 106. A *Frye* objection was raised to the admissibility of the report and causation testimony of Henson's medical expert. *Id.* at 105–06. The JCC denied the objection without conducting a separate *Frye* hearing. *Id.* at 106. On appeal to this Court, the JCC's overall finding of compensability was affirmed on the premise that although a *Frye* hearing was not conducted, even if it had occurred the medical testimony was admissible as based upon scientific precepts generally accepted in the scientific community. *Id.* This Court certified the question stated above (1) because the imposition of a *Frye* standard of admissibility of novel scientific evidence would certainly increase the cost and create delay in workers' compensation proceedings; (2) the need to retain experts to establish that the *Frye* conditions have been satisfied may serve as a deterrent to claimants being able to obtain counsel and prosecute a claim which might involve *Frye* issues; and (3) the present workers' compensation system allows the JCC to evaluate competing medical testimony and make a determination on

admissibility of expert opinions and superseded the prior precedent of *Frye*. *See Daubert*, 509 U.S. at 587-88.

[8] Section 440.29(4) instructs as follows:

All medical reports of authorized treating health care providers relating to the claimant and subject accident shall be received into evidence by the judge of compensation claims upon proper motion. However, such records must be served on the opposing party at least 30 days before the final hearing. This section does not limit any right of further discovery, including but not limited to, depositions.

§ 440.29(4), Fla. Stat. (2001).

causation. *See U.S. Sugar Corp. v. Henson*, 787 So. 2d 3, 10–11 (Fla. 1st DCA 2000) (citing *Wiley v. Se Erectors, Inc.,* 573 So. 2d 946 (Fla. 1st DCA 1991)); *Martin Marietta Corp. v. Glumb,* 523 So. 2d 1190 (Fla. 1st DCA 1988); *Smith v. Crane Cams, Inc.,* 418 So. 2d 1266, 1269 (Fla. 1st DCA 1982).

The following excerpt best encapsulates the arguments asserted by Henson before the supreme court:

> [B]ecause the workers' compensation scheme is based on "a mutual renunciation of common law rights and defenses by employers and employees alike," section 440.015, Florida Statutes (1995), the common law *Frye* standard could not be a bar to a claimant's recovery. In addition, [Henson] argues that *Frye*-testing medical testimony in workers' compensation cases would be contrary to section 440.29(4), Florida Statutes (1995), in which the legislature has provided that, upon proper motion, "[a]ll medical *reports of authorized treating health care providers* relating to the claimant and subject accident *shall be received into evidence* by the [JCC]." Finally, Henson submits that *Frye* testing is unnecessary to assure evidentiary reliability, because section 440.13(9)(c) provides for the appointment of expert medical advisors to assist the JCC with issues of medical causation and requires that the EMA [expert medical advisor] opinion "is presumed to be correct unless there is clear and convincing evidence to the contrary."

*Henson*, 823 So. 2d at 108 (emphasis added) (quoting *Henson*, 787 So. 2d at 10).[9]

Regarding application of section 440.29(4), considering *Frye*, the supreme court found no conflict, reasoning as follows:

---

[9] Additional argument encompassed section 440.105, Florida Statutes (1995), that further provides, "It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker . . . ."

8

First, adoption of the *Frye* standard within the worker's compensation system does not conflict with the above-quoted portion of section 440.29(4), because this section's mandated admission of "medical reports" does not speak on the issue of expert *opinions*. This statutory provision only ensures the admission into evidence of the *written records* of the claimant's treating physicians and does not address the content of expert opinion testimony. *See* § 440.29(4), Fla. Stat. (2001). Thus, section 440.29 has no bearing on the question before us.

*Id*. (emphasis added).

Then, the supreme court pivoted to specifically address expert medical opinions as follows:

Section 440.13(9), Florida Statutes (2001), defines the role and appointment of expert medical advisors (EMA's) in workers' compensation proceedings. While the statutory framework certainly allows the JCC to rely upon an EMA's expert opinion, *see* § 440.13(9)(c) ("The opinion of the [EMA] is presumed to be correct unless there is clear and convincing evidence to the contrary as determined by the [JCC]."), none of the provisions of chapter 440 preclude or conflict with use of the *Frye* criteria to test and ensure the reliability of novel scientific methods utilized by any expert witness. *See* § 440.13(9), Fla. Stat. (2001).

*Id*.

Ultimately, the supreme court determined "it is only logical for us to explicitly extend the reasoning of our prior decisions in the civil and criminal arenas to the area of workers' compensation claims. The *Frye* test must be performed to ensure the

9

trustworthiness of novel scientific theories." *Id.* at 109.[10] Stopping here, with recognition of the holding of *Henson* and nothing more—we would be compelled to allow *Daubert* challenges to EMA reports and opinions. However, as will be detailed below, the legal landscape has changed since *Henson*: The Legislature has amended relevant portions of Chapter 440, and the supreme court has disclaimed jurisdiction over the rules of workers' compensation proceedings.

Our analysis here is on a clean slate as we contemplate an amended version of the statute and/or different statutes altogether. The *Henson* opinion did not address section 440.25(4)(d). Furthermore, declarations in *Henson* resulted from the sole question of whether section 440.29(4), rendering admissible all medical *reports* of authorized treating health care providers in a workers' compensation proceeding, precluded application of the *Frye* standard. In contrast, our analysis is on the text of section 440.25(4)(d)—as amended—and amended statutes supersede analyses in prior cases that were based on prior statutory versions or did not address the precise legal argument presented here. *Beans v. Beans*, 407 So. 3d 483 (Fla. 1st DCA 2024).

---

[10] The supreme court provided an important reminder which is worthy of restatement:

> We wish to highlight the principle that under *Frye*, the inquiry must focus only on the general acceptance of the scientific principles and methodologies upon which an expert relies in rendering his or her opinion. Certainly, the opinion of the testifying expert need not be generally accepted as well. Otherwise, the utility of expert testimony would be entirely erased, and "opinion" testimony would not be opinion at all—it would simply be the recitation of recognized scientific principles to the fact finder.

*Henson*, 787 So. 2d at 110. This would also be applicable to application of the *Daubert* standard.

A timeline of relevant statutory amendments and precedent shaping the evidentiary and procedural rules at play here is informative:

*1957*: Enactment of section 440.25(3)(b), Florida Statutes, that provides as follows:

> At such hearing the claimant and employer may each present evidence in respect to such claim and may be represented by an attorney. When there is a conflict in medical evidence at the hearing the deputy commissioner may designate a disinterested doctor to submit a report or to testify in the proceeding, after such doctor has reviewed the medical records and evidence, examined the claimant, or otherwise made such investigation as appropriate. *The report or testimony of any doctor so designated by the deputy commissioner shall be made a part of the record of the proceedings and shall be given the same consideration by the deputy commissioner as is accorded other medical evidence submitted in the proceeding*; . . .

> § 440.25(3)(b), Fla. Stat. (1957) (emphasis added);

*1985*: Florida expressly adopts the *Frye* standard. *See Bundy v. State*, 471 So. 2d 9 (Fla. 1985);

*1993*: The Supreme Court of the United States directs that the Federal Rules of Evidence supersede *Frye*. *See Daubert*, 509 U.S. 579;

> *The Florida Legislature renumbers section 440.25(3)(b) to (4)(d) and amends it as follows:

> When there is a conflict in the medical evidence submitted at the hearing, *the provisions of s. 440.13 shall apply*. The report or testimony of the expert medical advisor shall be made a part

11

of the record of the proceedings and shall be given the same consideration by the judge of compensation claims as is accorded other medical evidence submitted in the proceeding; . . .

§ 440.25(4)(d), Fla. Stat. (1993) (emphasis added).

*The Florida Legislature enacts the EMA provision in section 440.13(9) which declares that the report or testimony of an expert medical advisor is "presumed correct unless there is clear and convincing evidence to the contrary as determined by a judge of compensation claims." § 440.13(9)(c), Fla. Stat. (1993);

*2001*:   Section 440.25(4)(d) was amended to read:

When there is a conflict in the medical evidence submitted at the hearing, the judge of compensation claims may *designate a disinterested doctor* to submit a report or to testify at the proceeding; . . . The report or testimony of any doctor so designated by the judge of compensation claims shall be made a part of the record of the proceedings and shall be given the same consideration by the judge of compensation claims as is accorded other medical evidence submitted in the proceeding; . . .

§ 440.25(4)(d), Fla. Stat. (2001) (emphasis added);

*2002*:   The Florida Supreme Court issues *Henson*, 823 So. 2d 104, which declared that the *Frye* standard is the generally acceptable standard for admissibility of novel evidence and applies to medical experts in workers' compensation proceedings;

*2003*: The Legislature again amends section 440.25(4)(d) to read as follows, "When there is a conflict in the medical evidence submitted at the hearing, the provisions of s. 440.13 shall apply. *The report or testimony of the expert medical advisor shall be admitted into evidence in a proceeding . . . .*";[11]

*Section 440.25(4)(d) now mandates report or testimony of an EMA "shall be admitted into evidence."

*2004*: The Florida Supreme Court declared that it lacks jurisdiction over the rules of workers' compensation procedure as follows:

Having reviewed our jurisdiction under the Florida Constitution, we conclude that this Court lacks the authority to promulgate rules of workers' compensation procedure. The original and appellate jurisdiction of the courts of Florida is derived entirely from article V of the Florida Constitution. This Court has previously cited to article V, section 2(a), of the Florida Constitution as authority for the Court's adoption of workers' compensation rules of procedure. That subsection provides that "[t]he supreme court shall adopt rules for the practice and procedure in all *courts.*" (emphasis added). Article V, section 1, of the Florida Constitution provides that "[t]he judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts. No other courts may be established by

---

[11] This amendment deleted disinterested doctor and substituted expert medical advisor. It also removed language regarding the EMA opinion being given the same consideration as other medical evidence, removing any conflict with section 440.13.

13

the state, any political subdivision or any municipality." The Office of the Judges of Compensation Claims (OJCC) is not a court of this State because it is neither the supreme court, a district court of appeal, a circuit court, nor a county court.

*In Re Amend. to the Fla. Rules of Workers' Comp. Proc.*, 891 So. 2d 474, 477–78 (Fla. 2004); *see also De Jesus Abreu v. Riverland Elem. Sch.*, 301 So. 3d 1005 (Fla. 1st DCA 2019);[12]

*2006*: The Florida Supreme Court issues *Ibar v. State*, 938 So. 2d 451 (Fla. 2006), announcing that the *Frye* standard, rather than *Daubert*, applied in Florida;

*2010:* Section 440.29(3), provides that, "The practice and procedure before the judge of compensation claims shall be governed by the rules adopted by the Supreme Court. . . ." * Contrary to *In Re Amend. to the Rules of Workers' Comp. Proc.*, 891 So. 2d at 474;

*2011*: Legislature amends section 440.29(3) to, "The practice and procedure before the judge of compensation claims shall be governed by the rules adopted by the Office of Judges of Compensation Claims." *Now, consistent with the Florida Supreme Court's disclaimer of

---

[12] This Court has since consistently held that it is within the Legislature's purview to establish rules of evidence for workers' compensation. *See, e.g.*, *Booker*, 166 So. 3d at 192; *Cortina v. State, Dep't of HRS*, 901 So. 2d 273, 274 (Fla. 1st DCA 2005) (holding section 440.13(5)(e)'s limit on admissible medical witnesses to authorized treating IME or EMA does not violate separation of powers because "this court has consistently recognized and upheld the Legislature's prerogative as to evidentiary issues in workers' compensation cases").

jurisdiction over rules of procedure in workers' compensation proceedings;

*2013*: The Florida Legislature modified section 90.702, Florida Statutes, to adopt the *Daubert* standard for expert testimony in the courts of this state in place of the *Frye* standard*;*

*2017*: The Florida Supreme Court rejected the implementation of *Daubert* and retained the *Frye* standard because it perceived the Florida Legislature as infringing on its power to enact procedural law when it amended sections 90.702 and 90.704 of the Florida Evidence Code in 2013. *See In re Amend. to Fla. Evidence Code*, 210 So. 3d 1231, 1239 (Fla. 2017); *Delisle v. Crane Co.*, 258 So. 3d 1219, 1229 (Fla. 2018);

*2019*: In *In Re. Amend. to Fla. Evidence Code,* 278 So. 3d 551 (Fla. 2019), the Florida Supreme Court receded from its 2017 decision and adopted *Daubert*.

As illuminated by the timeline, the precedential impact of *Henson* is limited for the following reasons: (1) section 440.25(4)(d) was amended in 2003, one year after *Henson*, to instruct that the "report or testimony of the expert medical advisor *shall be admitted* into evidence in a proceeding . . . ." The prior version only required that the EMA report be entered into the "record"; (2) two years after *Henson*, the supreme court held that it does not have jurisdiction over the rules of workers' compensation procedure. *See In re Amend. to Rules of WC Proc.*, 891 So. 2d. at 477–78; and (3) the 2003 amendment deleted from section 440.24(4)(d), the instruction that "expert medical advisors" shall be considered like other medical experts, erasing the explicit conflict with the treatment of EMA opinions under 440.13(9)(c), requiring that the opinion is presumed correct unless there is clear and convincing evidence to the contrary.

In the 2020 version of section 440.24(4)(d) the Legislature's deliberate use of language that the report or testimony of an EMA

"shall be admitted into evidence in a proceeding" is not directory. "Based on its plain and ordinary meaning, the word 'shall' in a statute usually has a mandatory connotation." *See Izaguirre v. Beach Walk Resort/Travelers Ins.*, 272 So. 3d 819, 820 (Fla. 1st DCA 2019). And use of the term "shall" "leads inevitably to the conclusion that the provision is not amenable to an exercise of discretion." *Id.*; *see also DeGregorio v. Balkwill*, 853 So. 2d 371, 374 (Fla. 2003) (holding that when the word "shall" is used in a statute, it generally requires mandatory compliance); *Palm Springs Gen. Hosp. v. Cabrera*, 698 So. 2d 1352, 1356 (Fla. 1st DCA 1997) ("The statutory language provides no support for the view that the statute is directory only, or that evaluation by expert medical advisors is to be left to the discretion of the judges of compensation claims."); *Steinbrecher v. Better Constr. Co.*, 587 So. 2d 492, 494 (Fla. 1st DCA 1991) (holding penalty for late payment of compensation is mandatory where statute states such penalty "shall be paid").

"'[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning . . . the statute must be given its plain and obvious meaning.'" *Fla. Dep't of Revenue v. New Sea Escape Cruises, Ltd.*, 894 So. 2d 954, 960 (Fla. 2005) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)). Section 440.25(4)(d) is clear and unambiguous, and it unequivocally leaves the JCC no discretion and no role in determining *admissibility* of an EMA's report or testimony. Section 440.25(4)(d) statutorily mandates that the EMA report and testimony are admissible. Thus, there exists no need for a "gatekeeper" of evidence. After all, the *Daubert* standard determines admissibility; it does not apply to the weight or credibility to be afforded the opinions. *See Booker*, 166 So. 3d at 192 (citing *Daubert*, 509 U.S. at 597). Notably, in the 2003 amendments to Chapter 440, the Legislature used this same modal verb, "shall," in another subsection of 440.13 which allows for a "consensus IME" (the parties mutually agree to a specific doctor to perform an evaluation).

Pursuant to the amended version of section 440.25(4)(d), there is no threshold of admissibility for the report and opinions of an EMA. This is not to say that the EMA opinion cannot be challenged as unreliable, as the party opposing the presumption of correctness

16

may overcome it by clear and convincing evidence. *See* § 440.13(9)(c), Fla. Stat. An EMA opinion may be challenged as to its weight and credibility and perhaps argued to be demoted to equal relevance of any other expert medical opinion in evidence. *See Lowe's Home Ctrs., Inc. v. Beekman*, 187 So. 3d 318, 322 (Fla. 1st DCA 2016) (noting that "even opinions voiced by an EMA which 'exceed the scope' of the perceived disagreement would be admissible—but not presumptively correct," and "all other medical opinions expressed by the EMA carry the same weight as that of an independent medical examiner or an authorized treating physician"); *Fitzgerald v. Osceola Cnty. Sch. Bd.*, 974 So. 2d 1161, 1164 (Fla 1st DCA 2008) (noting that, even if an EMA's opinion is found by a JCC to not merit application of the statutory presumption of correctness, the opinion remains in evidence and "is, at bottom, a source of 'assistance' to the JCC").

"Although section 440.29(1), Florida Statutes (2008) (stating a JCC shall not be bound by technical or formal rules of procedure), permits a JCC more latitude than judges of general jurisdiction, neither this section nor any other provision in the workers' compensation law, excepts workers' compensation hearings from the rules of evidence." *Amos v. Gartner, Inc.*, 17 So. 3d 829, 833 (Fla. 1st DCA 2009) (citing *Martin Marietta Corp. v. Roop,* 566 So. 2d 40, 42 (Fla. 1st DCA 1990)). The principle that the rules of evidence apply to workers' compensation proceedings remains viable and well-respected. However, the Legislature has carved out an exception in section 440.25(4)(d), which by its plain language, precludes application of *Daubert* to EMA reports and opinions because they are admissible as a matter of law.

Here, the E/C raised a *Daubert* challenge to the admissibility of the EMA report and testimony of Dr. Cameron. The JCC, having determined that a *Daubert* challenge may be raised to EMA opinions, considered the factors and determined Dr. Cameron's report and testimony were admissible. Accordingly, the JCC ultimately considered the EMA opinions as dictated by section 440.13(9)(c) in reaching his determination of compensability, and competent, substantial evidence exists to support the JCC's conclusion that the E/C failed to rebut the EMA presumption of correctness by clear and convincing evidence. The appellate court is required to affirm the lower tribunal if there is any basis in the

record to support the judgment on appeal. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644–45 (Fla. 1999); *Staffmark v. Merrell*, 43 So. 3d 792, 795 (Fla. 1st DCA 2010) (applying the "tipsy coachman" doctrine in a workers' compensation case).

## III. *Conclusion*

While the JCC erred in applying the *Daubert* standard to determine admissibility of the EMA testimony and report, we find it was harmless error. The EMA opinion was ultimately admitted and properly considered by the JCC. As the case was bifurcated for initial litigation of compensability, we remand for further proceedings consistent with this opinion.

AFFIRMED and REMANDED.

ROBERTS and RAY, JJ., concur.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

Hinda Klein and Jesse Dyer of Conroy Simberg, Hollywood, for Appellants.

Kenneth B. Schwartz of Gordon & Partners, P.A., North Palm Beach, for Appellee.